## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-14280-BLOOM

MICHAEL DESHAWN JOHNSON,

      Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## ORDER ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court on Petitioner Michael Deshawn Johnson's *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. [1]. Petitioner challenges the constitutionality of his state convictions and sentences in case number 2015CF000727A entered in the Nineteenth Judicial Circuit for St. Lucie County, Florida. *See generally id.* Respondent filed a Response to the Petition, ECF No. [9], with an Appendix, ECF No. [10], including attached Exhibits, ECF Nos. [10-1] – [10-6] and a Notice of Filing Transcripts, ECF No. [11], including the trial transcript, ECF No. [11-1].[1] The Court has carefully considered the parties' written submissions, the record, and the applicable law. For the following reasons, the Petition is denied.

### I.    BACKGROUND

On April 7, 2015, the State charged Petitioner in a Second Amended Information with one count of being a felon in possession of a firearm (Count 1), one count of possession of ethylone

---

[1] Petitioner did not file a Reply and the deadline by which to do so has long since passed. *See* ECF No. [5] at 4 ("Petitioner may, but is not required to, file a reply within 30 days of the date on which the Court dockets the Respondent's [Response.]"); ECF No. [9] at 80 (stating that the Response was electronically filed on September 20, 2022).

(Count 2), one count of possession of cannabis (Count 3), two counts of escaping custody (Counts 4 and 7), and one count of failure to appear (Count 6).[2] *See* ECF No. [10-1] at 50-51.

The series of events giving rise to Petitioner's criminal charges began on the evening of March 19, 2015, in Fort Pierce, Florida, when Petitioner was driving with what appeared to be a slightly ajar driver's side door; on that evening, Petitioner was driving with his fourteen-year-old cousin, Scarly Metelus (Metelus), who was in the passenger's seat. *See id.* at 5; ECF No. [11-1] at 343:22-25, 348:14-349:15; *see also* ECF No. [1] at 11 (identifying the name of Petitioner's passenger). Upon observing the driver's side door, Detectives Nathaniel Stubley and Matthew Dietrich effectuated a traffic stop. *See id.* at 342:10-343:25. Before Petitioner stopped, the officers paced his vehicle as traveling ten miles over the speed limit. *See id.* at 344:4-23. Once Petitioner pulled over, both officers exited their vehicle and approached Petitioner's car; Detective Stubley approached the driver's side while Detective Dietrich approached the vehicle's passenger side. *See id.* at 346:15-25. Neither officer had his weapon drawn as he made his approach. *See id.* at 347:1-7.

Petitioner acted nervous during the traffic stop, stuttering and evading the officers' questions; he also argued over the legality of the stop. *See id.* at 347:8-15. Petitioner's behavior prompted Detective Stubley to ask both Petitioner and his passenger to step out of the car to remove Petitioner from reach of anything that might pose a threat to the officers (e.g., a weapon). *See id.* at 350:5-12. At this point, a third officer—Detective Charla Harper—arrived to assist with the traffic stop. *See id.* at 350:20-25.

Petitioner's behavior also prompted Detective Stubley to call the police force's K9 unit for a "sniff" of Petitioner's vehicle. *Id.* at 351:14-352:6. Within a couple of minutes of making the

---

[2] There was a seventh charge in the Second Amended Information—resisting an officer without violence (Count 5)—but the State "announc[ed] a *nolle prosequi*" on that charge. ECF No. [11-1] at 18:11-13.

call, Officer Oscar Trinidad—the K9 unit's dog handler—arrived on the scene with his dog, Tobago—who was trained to detect narcotics and apprehend fleeing suspects. *See id.* at 352:9-22, 389:8-390:9. Tobago conducted his "sniff" of Petitioner's vehicle and alerted the officers to the presence of narcotics. *See id.* at 353:2-12. Detective Stubley then searched Petitioner's vehicle, finding a loaded firearm, one gram of cannabis, and 6.5 grams of "a white powdery substance" in the vehicle's glovebox. *See* ECF No. [10-1] at 5; ECF No. [11-1] at 353:13-354:3, 355:9-16. A field test was conducted on the powdery substance, which indicated that the substance was cocaine. *See* ECF No. [10-1] at 5; ECF No. [11-1] at 696:23-697:1. Following the discovery of the contraband, Detective Stubley ran a search of Petitioner's name in the police department's database, revealing Petitioner to be a convicted felon. *See* ECF No. [11-1] at 354:4-19.

Detective Stubley attempted to place Petitioner under arrest, but Petitioner fled. *See id.* at 356:22-357:3, 358:1-4. Detective Stubley pursued Petitioner and ordered him to stop, but Petitioner ignored the command. *See id.* at 358:13-16. Officer Trinidad released Tobago to pursue Petitioner; Tobago apprehended Petitioner following an approximately 100-foot chase. *See id.* at 359:10-360:5. Detective Stubley then handcuffed Petitioner. *See id.* at 360:11-23. Detective Stubley collected the evidence from the glovebox and started the intake paperwork. *See id.* at 365:9-16. While Detective Stubley was doing this, Petitioner attempted to flee a second time. *See id.* at 366:8-16. Again, after traveling approximately 100 feet, Petitioner tripped and fell to the ground and Detective Dietrich apprehended him. *See id.* at 406:2-21.

The drug evidence was forwarded to the Indian River Crime Laboratory where it was received by Ryan Bennett—a forensic chemist. *See id.* at 494:3-16. Mr. Bennet confirmed that the "plant matter" taken from Petitioner's vehicle was 0.76 grams of cannabis. *See id.* at 496:13-497:12. Mr. Bennet then tested the white powdery substance, finding it to be 5.69 grams of

ethylone. *See id.* at 498:3-500:14.

After his first appearance on March 20, 2015, the presiding judge set Petitioner's bond at $36,000.00, which Petitioner posted on July 30, 2015. *See* ECF No. [10-1] at 11-12, 16-30. On January 13, 2016, Petitioner failed to appear as ordered, and, consequently, a bench warrant was issued for his arrest. *See id.* at 32. On May 11, 2016, a fugitive task force rearrested Petitioner at an apartment in St. Lucie County, Florida. *See* ECF No. [11-1] at 479:8-15, 504:2-505:3, 509:8-19.

Petitioner proceeded to trial. *See generally* ECF No. [11-1]. On January 23, 2017, Petitioner pleaded no contest to Count 6, *see* ECF No. [10-1] at 53-59, and on January 25, 2017, a jury found Petitioner guilty of Counts 1, 2, 3, 4, and 7, *see id.* at 61-62. The trial court adjudicated Petitioner guilty on Counts 1, 2, 3, 4, 6, and 7, and sentenced Petitioner to a term of imprisonment totaling twenty-five years. *See id.* at 67-68, 70-82.

On March 3, 2017, Petitioner filed a direct appeal raising four issues. *See generally id.* at 88-137. The State filed an answer to Petitioner's direct appeal, *see generally id.* at 139-86, to which Petitioner filed a reply, *see generally id.* at 188-97. On March 1, 2018, the Florida Fourth District Court of Appeal ("Fourth DCA") affirmed the lower court proceedings in a *per curiam*, unwritten opinion. *See Johnson v. State*, 241 So. 3d 155 (Fla. 4th DCA 2018). Petitioner filed a motion for rehearing, *see generally* ECF No. [10-1] at 201-06, which the Fourth DCA denied*, see generally id.* at 208. The Fourth DCA issued its Mandate on May 4, 2018. *See generally id.* at 210.

On May 29, 2019, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. *See generally id.* at 220-40. On November 15, 2019, Petitioner filed an Amended Rule 3.850 Motion, raising twelve grounds for relief. *See generally* ECF No. [10-2] at 2-55. On October 30, 2020, the postconviction court denied Petitioner's Amended Rule 3.850

Motion. *See generally* ECF No. [10-3] at 49-99. On appeal, the Fourth DCA affirmed the denial in a *per curiam*, unelaborated opinion. *See Johnson v. State*, 337 So. 3d 336 (Fla. 4th DCA 2022), *review dismissed*, No. SC22-752, 2022 WL 2047743 (Fla. June 7, 2022). The Fourth DCA issued its Mandate on June 3, 2022. *See generally* ECF No. [10-6] at 92.

Petitioner filed this Petition on July 1, 2022.[3] Petitioner asserts that: (1) trial counsel was ineffective for failing to file a motion to suppress on the ground that the traffic stop was illegal ("Ground One"), *see* ECF No. [1] at 5-6; (2) trial counsel was ineffective for failing to file a motion to suppress on the ground that police illegally prolonged the traffic stop to conduct a "sniff" ("Ground Two"), *see id.* at 8-9; (3) trial counsel was ineffective for failing to call the passenger in Petitioner's vehicle, Petitioner's cousin Metelus, as a witness, ("Ground Three"), *see id.* at 11; (4) trial counsel was ineffective for failing to object "to the admission of the ethylone at trial" ("Ground Four"), *id.* at 12-13; and (5) trial counsel was ineffective for failing to file a legally sufficient motion for judgment of acquittal ("Ground Five"), *see id.* at 14-15.

## II.    STANDARDS

### A.    Deference under Section 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). This standard is

---

[3] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

"difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citation omitted).

Under the AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is contrary to established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

This is "a highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks, citations, and footnote call number omitted). Deferential review under

section 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Finally, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

### B.      Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). This includes not just the right to the presence of counsel, but also "the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687-88. To establish deficient performance, a petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91.

A court's review of counsel's performance should "only" focus on "what is constitutionally compelled" and not merely "what is possible or 'what is prudent or appropriate[.]'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

To satisfy *Strickland*'s prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

### III.     DISCUSSION

#### A.     Timeliness and Exhaustion

Before seeking a federal writ of habeas corpus, "a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby [allowing] the State . . . to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks and citation omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citations and quotation marks omitted). This requirement—acting together with the requirements of section 2254(d)—was designed "to ensure that state proceedings are the central process [for asserting constitutional challenges to state convictions], not just a preliminary step for a later federal habeas proceeding[.]" *Harrington*, 562 U.S. at 103 (citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). Consequently, if a claim raised in a section 2254 petition is not exhausted, the claim is barred from consideration and must be dismissed. *See Brown v. Dixon*, 591 F. Supp. 3d 1251, 1265 (S.D. Fla. 2022) *certificate of appealability denied sub nom Brown v. Dep't of Corr.*, No. 22-11344, 2023 WL 3064699 (11th Cir. Feb. 17, 2023).

The Court finds—and Respondent does not contest—that Grounds One, Two, Three, and Four are exhausted and properly presented for habeas review. *See generally* ECF No. [9]. Respondent, however, argues that Ground Five is unexhausted because Petitioner failed to raise the federal nature of the claim in state court. *See id.* at 32-35. The Court disagrees because Petitioner raised the relevant arguments in his direct appeal. The Court explains.

#### 1.     Grounds One, Two, Three, and Four

Petitioner properly exhausted Grounds One, Two, Three, and Four. "In Florida, exhaustion

usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (alteration in original). Petitioner raised Grounds One, Two, Three, and Four in his Amended Rule 3.850 Motion, *see* ECF No. [10-2] at 8-15, 19-23, 33-34, and appealed the postconviction court's denial of that pleading, *see* ECF No. [10-6] at 5-6. Those claims, therefore, are exhausted.

      2.    **Ground Five**

Respondent argues that Ground Five is unexhausted, claiming Petitioner failed to raise the federal nature of that claim before the Fourth DCA. *See* ECF No. [9] at 32-35. That claim, however, ignores Petitioner's arguments that "[a] conviction not supported by the evidence violates the Due Process Clause[] of the . . . federal constitution[,]" ECF No. [10-1] at 100 (citing *Jackson v. Virginia*, 443 U.S. 307 (1970)), and that trial counsel was "ineffective under the Due Process Clause[] of the . . . federal constitution[,]" *id.* at 107 (citing U.S. Const. amends. VI & XIV; other citations omitted). The Court finds that those arguments were sufficient to alert the Fourth DCA to the federal nature of Petitioner's claim.

Because reasonable minds could disagree over Ground Five's exhaustion, the Court conducts a *de novo* review and denies this Ground on its merits rather than giving further consideration to potential procedural deficiencies. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (explaining courts can "deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review" (citing 28 U.S.C. § 2254(a)); *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020).

**B.      The Merits**

**1.      Ground One**

In Ground One of the Petition, Petitioner argues that he was denied effective assistance of counsel when trial counsel failed to file a motion to suppress "firearm and drug evidence" on the ground that it was discovered pursuant to an unlawful traffic stop. ECF No. [1] at 5. The Court denies this claim on the merits because the trial court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not amount to ineffective assistance.

Petitioner raised this ground for relief in his Amended Rule 3.850 Motion. *See* ECF No. [10-2] at 8-10. In that pleading, Petitioner claimed that the detectives' purported reasons for making the traffic stop were false. *See id.* at 8-9. Petitioner avers that there was camera footage supporting his position and that trial counsel was ineffective for failing to procure such video evidence. *See id.* at 9-10. Petitioner asserted that but for trial counsel's failure to suppress the drug and firearm evidence obtained during the search, the outcome of his trial would have been different. *See id.* at 10-11. The postconviction court reviewed and rejected Petitioner's claim, finding it unlikely that a motion to suppress evidence would have been granted considering the arresting officers' testimony establishing the legality of the traffic stop. *See* ECF No. [10-4] at 50-51. The postconviction court's determination is reasonable and entitled to deference under the AEDPA.

"The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (alteration adopted; quotation

marks and citations omitted). To comply with the Fourth Amendment, officers conducting a traffic stop must have reasonable suspicion to justify such a seizure. *See Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("All parties agree that to justify [a traffic stop], officers need only reasonable suspicion[.]" (quotation marks omitted)). In other words, the officers must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014) (quotation marks omitted). Criminal activity justifying a traffic stop includes even minor traffic violations. *United States v. Campbell*, 970 F.3d 1342, 1351 (11th Cir. 2020) (holding "a rapidly blinking turn signal" provided police with reasonable suspicion to effectuate a traffic stop).

Trial counsel had no basis for arguing a motion to suppress because Detectives Stubley and Dietrich's unrefuted testimony established the legality of that traffic stop. Detective Stubley testified that he stopped Petitioner because he was driving with his "door . . . ajar" and driving ten miles per hour over the posted speed limit. ECF No. [11-1] at 343:9-344:25, 380:15-25. Detective Matthew Dietrich—who was with Detective Stubley on the night of the traffic stop—confirmed that Petitioner was driving with his door ajar and speeding. *See id.* at 426:16-427:1. Detective Charla Harper—a third officer present for the traffic stop, *see id.* at 450:4-14—could not confirm whether Petitioner was driving with the driver's door ajar or whether Petitioner was speeding; however, Detective Harper admitted that she was not able to view the vehicle from the same vantage point as the other two detectives, *see id.* at 458:12-14 (testifying that she did not observe Petitioner's vehicle speeding because her "back would have been towards [Petitioner] as he approached"); *id.* at 458:9-14 (testifying that she could not see whether Petitioner was driving with the driver's door ajar because "there was . . . [an]other vehicle [] between [hers] and [Petitioner's].").

Under Florida law, an officer may fine a driver $100 for traveling ten miles per hour over the speed limit, *see* Fla. Stat. § 318.18(3)(b) (2023), and may conduct a traffic stop of a vehicle that "is unsafe or not equipped as required by law," Fla. Stat. § 316.610(1) (2023). The manner in which Petitioner operated his vehicle, as described under oath by Detectives Stubley and Dietrich, fell within the ambit of conduct regulated by those statutes. First, Detective Stubley was able to pace the vehicle, finding that Petitioner was traveling thirty-five miles per hour in a twenty-five mile per hour zone.[4] *See* ECF No. [11-1] at 368:6-8. Second, both Detective Stubley and Dietrich saw Petitioner operating his vehicle with the driver's door open, which created a potential hazard for himself and other drivers. *See id.* at 343:9-344:25, 380:15-25, 426:16-427:1.

Petitioner argues that Detective Harper's testimony refuted the testimony of Detectives Stubley and Dietrich and there is video evidence contradicting Detectives Stubley and Dietrich's telling of events; neither argument convinces. *See* ECF No. [1] at 5-6. Detective Harper's testimony did not contradict Detectives Stubley and Dietrich's testimony. Rather, Detective Harper could not confirm the detectives' account of events. As previously mentioned, Detective Harper's testimony confirms that she could not view Petitioner's conduct from the other two detectives' perspective, explaining her inability to confirm Detectives Stubley and Dietrich's account of events. *See* ECF No. [11-1] at 458:4-14, 460:4-6. Moreover, Detective Harper also admitted that

---

[4] Detective Harper offered her view, at trial, that there was not enough time to pace Petitioner's vehicle. *See* ECF No. [11-1] at 458:15-22. Even if correct, Detective Harper's account of events did not negate the validity of the traffic stop. Florida law states that speeding—to any degree—is a punishable noncriminal traffic infraction. *See* Fla. Stat. § 316.183 (2023); *see also* Fla. Stat. § 318.18(3)(b) (listing the punishment for exceeding the speed limit by one mile per hour). Further, pacing is not a prerequisite to conducting a traffic stop for speeding as Florida's District Courts of Appeal have held that police officers may conduct a traffic stop for speeding "based on the officer's visual or aural perceptions[.]" *Young v. State*, 33 So. 3d 151, 153 (Fla. 4th DCA 2010) (quoting *State v. Allen*, 978 So. 2d 254, 255 (Fla. 2d DCA 2008)). When Detective Dietrich first saw Petitioner's car on the night of the traffic stop, he noted—based on his visual perceptions—that Petitioner was "going pretty fast." ECF No. [11-1] at 344:16-22. Detective Dietrich's visual perception of Petitioner's speed was a sufficient basis to conduct a traffic stop.

she could not recall several details of the traffic stop partly because she was not the officer responsible for the stop. *See id.* at 461:20-21. For instance, she could not recall who initiated the stop or whether Petitioner was driving the vehicle. *See id.* at 450:8-10, 457:22-24.

Next, Petitioner offers unsubstantiated claims that the officers possess video evidence that would reveal he was driving in a manner that did not violate the law. However, aside from his unelaborated claims, Petitioner fails to provide any evidence that the police surveillance footage he references exists and, if such footage exists, would be favorable to his defense. In sum, Petitioner failed to rebut Detectives Stubley and Dietrich's testimony that he was driving in a manner that violated Florida law.

Because Petitioner was violating several traffic statutes, the traffic stop was lawful. For that reason, trial counsel was not deficient for failing to raise a meritless argument challenging the traffic stop or the subsequent seizure of the firearm, cannabis, and ethylone. *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding that counsel cannot be ineffective for failing to raise a meritless argument); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"). Accordingly, the postconviction court correctly denied this ground for relief.

For the reasons explained above, the Court denies Ground One on the merits.

### 2.    Ground Two

In Ground Two of the Petition, Petitioner argues that he was denied effective assistance of counsel when trial counsel failed to file a motion to suppress "the firearm, ethylone, and marijuana" evidence on the ground that the officers unlawfully prolonged the traffic stop to conduct a "sniff." ECF No. [1] at 8. The Court denies this claim on the merits because the trial

court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not amount to ineffective assistance.

Petitioner raised this ground for relief in his Amended Rule 3.850 Motion. *See* ECF No. [10-2] at 11-15. There, Petitioner asserted that, following his traffic stop, the officers forced him to wait an additional eight to ten minutes for the K9 unit to arrive. *See id.* at 13. Petitioner maintained that he gave officers no reason to search his person or vehicle. *See id.* at 14. Petitioner argued that his trial counsel was ineffective for failing to research and assess the legality of the traffic stop or the ensuing "sniff" and that her failure to file a motion to suppress resulted in his conviction. *See id.* at 15. The postconviction court reviewed and rejected Petitioner's claim, finding that the K9 unit arrived on the scene only minutes after being called; thus, the officers did not illegally prolong the traffic stop. ECF No. [10-4] at 51-52. The postconviction court's determination is reasonable and entitled to deference under the AEDPA.

Following a traffic stop, an officer's investigation "must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007) (quotation marks omitted). "[T]he duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Id.* (quotation marks omitted). A Fourth Amendment violation occurs when police uncover contraband "during an unreasonably prolonged traffic stop." *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005). However, an officer may prolong a traffic stop if he has an "articulable suspicion of other illegal activity." *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (footnote call number and quotation marks omitted). Once an officer develops reasonable suspicion, he has a duty to investigate further. *United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005). A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity, including

"shaking" and "extreme[] nervous[ness]." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991).

Trial counsel was not ineffective for failing to file a motion to suppress "the firearm, ethylone, and marijuana" evidence on the ground that it was acquired pursuant to an illegally prolonged traffic stop. ECF No. [1] at 8. Officer Trinidad testified that when he arrived at the scene, he "observed . . . [Detectives] Stubley[] and [] Dietrich . . . conducting a traffic stop." ECF No. [11-1] at 393:6-10. Since the K9 unit arrived while the traffic stop was underway, the stop was not unreasonably prolonged in violation of the Fourth Amendment. *See United States v. Braddy*, 11 F.4th 1298, 1311-12 (11th Cir. 2021) ("'[T]he use of the canines to sniff the exterior of the vehicles during the course of lawful traffic stops did not offend the Fourth Amendment' when the uncontroverted testimony establishes that the canine units arrived while the officers were still conducting routine records checks and preparing the traffic citations." (quoting *United States v. Holt*, 777 F.3d 1234, 1257 (11th Cir. 2015))).

Even if the K9 unit arrived after the officers completed all checks incident to the traffic stop, Petitioner's excitable state gave the officers reasonable suspicion to believe that other illegal activity was afoot. *See Harris*, 928 F.2d at 1117. At trial, Detective Stubley testified that, while he was conducting the traffic stop, Petitioner was acting "nervous and agitated" and "arguing with [him] over the legality of the stop[.]" ECF No. [11-1] at 379:23-380:3. Detective Dietrich corroborated Detective Stubley's account during his testimony at trial, stating that Petitioner was "fidgeting and . . . paying attention to what[ was] going on inside the vehicle." *Id.* at 432:5-13. Due to Petitioner's behavior during the traffic stop, the officers would have been acting within the confines of the law if they decided to prolong the traffic stop to allow the K9 unit to conduct a "sniff" of Petitioner's vehicle. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

The officers did not illegally prolong Petitioner's traffic stop by calling the K9 unit to conduct a "sniff." Trial counsel, therefore, cannot be deemed ineffective for failing to seek suppression of lawfully obtained evidence, as any attempt to suppress such evidence would have been denied. *See Diaz*, 402 F.3d at 1142.

For the reasons explained above, the Court denies Ground Two on the merits.

### 3.    Ground Three

In Ground Three of the Petition, Petitioner argues that he was denied effective assistance of counsel when trial counsel failed to call Petitioner's fourteen-year-old cousin and passenger— Metelus—as a witness. *See* ECF No. [1] at 11. Petitioner claims Metelus would have testified that the firearm found in the vehicle did not belong to Petitioner and was placed in the vehicle without Petitioner's knowledge. *See id.* The Court denies this claim on the merits because the trial court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not prejudice the outcome of Petitioner's trial.

Petitioner raised this ground for relief in his Amended Rule 3.850 Motion, arguing that trial counsel was ineffective for failing to call Metelus and another witness to testify that the firearm discovered in the vehicle's glovebox did not belong to Petitioner. *See* ECF No. [10-2] at 33-34. The postconviction court reviewed and rejected this claim, finding that any testimony given by Metelus as to the contents of the glovebox would have been unreliable and vulnerable to attack by the State because Metelus told officers, on the night of Petitioner's arrest, that he had no knowledge of the glovebox's contents. *See* ECF No. [10-4] at 56-57. The postconviction court's determination is reasonable and entitled to deference under the AEDPA.

Petitioner fails to establish that trial counsel's failure to call Metelus prejudiced the outcome of his trial. A petitioner's burden to establish prejudice under *Strickland* is particularly

"heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quotation marks omitted). For that reason, the Eleventh Circuit has held that "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir.) (citations omitted), *cert. denied sub nom. McKiver v. Inch*, 142 S. Ct. 441 (2021).

Petitioner's assertions about the substance and admissibility of Metelus's testimony are purely speculative, and such claims fail to establish an entitlement to habeas relief. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner . . . ."). Contrary to Petitioner's argument, the arrest affidavit did, in fact, reflect that Metelus was unaware of the glovebox's contents; and it was because of this apparent lack of knowledge, the officer's released Metelus—a juvenile—to his guardians. *See* ECF No. [10-1] at 6. Further, even if Metelus testified at trial, it is far from certain that he would have offered testimony supporting Petitioner's theory of innocence. Accordingly, it was reasonable for the postconviction court to have concluded that Petitioner failed to carry his heavy burden in showing that Metelus's testimony would have been favorable to his defense, much less that there was a reasonable probability of it changing the outcome of the trial.

For the reasons explained above, the Court denies Ground Three on the merits.

### 4.    **Ground Four**

In Ground Four of the Petition, Petitioner argues that he was denied effective assistance of counsel when trial counsel "failed to object to the admission of the ethylone" evidence at trial on the ground that it had been tampered with. ECF No. [1] at 12-13. The Court denies this claim on

the merits because the trial court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not amount to ineffective assistance.

Petitioner raised this ground for relief in his Amended Rule 3.850 Motion. *See* ECF No. [10-2] at 19-23. Petitioner notes that the cocaine evidence seized from his vehicle weighed 6.5 grams, but the sample received by the crime lab weighed 5.69 grams. *See id.* at 19. Further, Petitioner states that the substance taken from the crime scene tested positive for cocaine during a field test but tested positive for ethylone when tested by the crime lab. *See id.* at 21. Petitioner claims that trial counsel failed to question Detective Stubley concerning these discrepancies and to object to the evidence's introduction, which, in turn, materially affected the outcome of his trial. *See id.* at 20-23. The postconviction court reviewed and rejected this claim for two reasons. First, Ryan Bennet—the forensic chemist who tested the powdery substance—explained the weight difference; thus, obviating the need to question Detective Stubley on this point. *See* ECF No. [10-4] at 53. Second, the postconviction court noted that field tests are sometimes inaccurate, which is why drug evidence is forwarded to crime labs for testing. *See id.* The postconviction court's determination is reasonable and entitled to deference under the AEDPA.

The record refutes Petitioner's claims of evidence tampering. In the arrest affidavit, Detective Stubley noted that he found "a small plastic bag . . . [containing] 6.5 grams of cocaine" in the glovebox of Petitioner's car. ECF No. [10-1] at 5. When Mr. Bennet received that bag, he emptied it and weighed only its contents, finding 5.69 grams of ethylone. *See* ECF No. [11-1] at 495:17-22, 500:6-10. That procedure accounts for the roughly 0.81-gram difference between the weight of the bag collected from Petitioner's glovebox and the weight recorded at the crime lab. Likewise, the discrepancy between the results of the field and lab tests does not suggest that the officers tampered with the drug evidence seized from Petitioner's car. Mr. Bennett testified that a

field test is similar to a color test in that it is useful for detecting the presence of controlled substances generally. *See id.* at 498:11-19. However, unlike a field test, a lab test analyzes unknown substances using several methods, *see id.* at 498:23-500:5, which is why it is not uncommon for a field test to yield different results from a lab test.[5] *Cf. Shaw v. Sec'y, Fla. Dep't of Corr.*, No. 19-cv-1442, 2021 WL 3494164, at *5 (M.D. Fla. Aug. 9, 2021) (explaining that lab test confirmed that substance seized during a narcotics operations that a field test identified as MDMA was in fact PVP, stating that "[t]his [wa]s not the first time a field test has come back positive for MDMA and then a lab test provides clarity." (citation omitted)).

In sum, the record refutes Petitioner's claim that police tampered with the evidence seized from his car; trial counsel, therefore, could not have objected to the evidence's introduction on the ground that it had been tampered with as there were no facts substantiating such a claim.

For the reasons explained above, the Court denies Ground Four on the merits.

### 5.    Ground Five

Finally, in Ground Five, Petitioner asserts that he was denied constitutionally effective assistance of counsel when trial counsel failed to file a legally sufficient motion for judgment of acquittal. *See* ECF No. [1] at 14. Trial counsel made the following motion for judgment of acquittal during trial:

> With regard to count[s] 1, 2, and 3, I'll argue the [judgment of acquittal] on those counts together. They're all possession counts. Count 1 is the firearm, counts 2 and 3, are the controlled substances. With regard to possession of anything, the State

---

[5] In the Petition, Petitioner references a third incident suggesting evidence tampering. ECF No. [1] at 13. Petitioner states that the crime lab "received a manila envelope containing [two] plastic sandwich bags each containing some white powder and rock-like material[.]" *Id.* Petitioner argues that this description is inconsistent with a photo—taken on the night of Petitioner's arrest—showing the evidence taken from his vehicle's glovebox. The Court declines to address this argument because Petitioner failed to raise this point in his Rule 3.850 Motion, *see generally* ECF No. [10-2] at 19-23, thus making the issue unexhausted and beyond the scope of the Court's review, *see Reese*, 541 U.S. at 29. However, even if the issue was exhausted, the Court would find the claim meritless because the photograph Petitioner references shows two small plastic bags and a firearm. *See* ECF No. [1] at 59; ECF No. [10-6] at 102.

> has proved -- failed to prove a prima facie case, that the defendant, Michael
> Johnson, was in fact in possession of anything. They failed to provide a prima facie
> case as -- with regards to knowledge of the identity (inaudible) specifically.

ECF No. [11-1] at 523:20-524:4. Petitioner argues that, in filing the motion for judgment of

acquittal, trial counsel should have argued that the firearm and drugs belonged to the passenger,

which would have refuted the State's position that Petitioner had knowledge and control over the

glovebox's contents. *See* ECF No. [1] at 14-15. The postconviction court considered and rejected

this argument, stating that even if trial counsel made the arguments Petitioner claims she should

have made, the motion would still have been denied. *See* ECF No. [10-4] at 53-54.

"[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a

court "must defer to the state's construction of its own law when the validity of the [ineffective-

assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir.

2017) (quotation marks omitted). And "[w]hether the state's evidence is sufficient to withstand a

motion for judgment of acquittal under Florida law is solely a state law matter." *Sweezy v. Sec'y,

Dep't of Corr.*, No. 20-CV-1623, 2023 WL 3251398, at *4 (M.D. Fla. May 4, 2023) (quotation

marks omitted). Here, the state court found that counsel was not ineffective because "there [was]

not a reasonable probability that a motion of acquittal would have been granted." ECF No. [10-4]

at 54. The state court "already has told us how the issue[] would have been resolved under Florida

[] law had [trial counsel] done what [Petitioner] argues [s]he should have done[.]" *Herring v. Sec'y.

Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). Therefore, this Court is bound by that

determination. *See Smith v. Sec'y, Dep't of Corr.*, No. 18-cv-0049, 2021 WL 1214948, at *12

(M.D. Fla. Mar. 31, 2021) ("[T]o the extent the state court concluded the motions for judgment of

acquittal would have been denied, this Court is obliged to defer because that is a question of state

law.").

Even if the issue were for the Court to decide, Petitioner would not be entitled to relief because Petitioner fails to demonstrate that trial counsel's performance prejudiced him. Under Florida law, when a defendant moves for judgment of acquittal, the defendant admit all facts in evidence and the court draws all reasonable inferences from the evidence in the State's favor. *Williams v. State*, 70 So. 3d 726, 730 (Fla. 4th DCA 2011) (citing *Floyd v. State*, 913 So. 2d 564, 571 (Fla. 2005)). In this case, such evidence included Detective Stubley's testimony that Petitioner tried to flee on two separate occasions the night he was arrested. *See* ECF No. [11-1] at 357:21-358:18, 366:15-22. In Florida, "evidence of flight [] or resistance to lawful arrest after the fact of a crime is admissible as 'being relevant to consciousness of guilt which may be inferred from such circumstances.'" *Escobar v. State*, 699 So. 2d 988, 995 (Fla. 1997) (quoting *Straight v. State*, 397 So. 2d 903, 908 (Fla. 1981)). Given the evidence of Petitioner's attempts to escape arrest, it is unlikely the trial court would have granted the motion for judgment of acquittal even if trial counsel argued that the firearm and drugs found in the glovebox belonged to the passenger.[6]

For the reasons explained above, the Court denies Ground Five on the merits.

### C.    Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*,

---

[6] The Court cannot rule on this Ground for relief without at least mentioning how deeply unconvincing this argument is. If trial counsel argued for judgment of acquittal on the ground that the evidence taken from the glovebox belonged to the passenger, it would have required her to argue that the firearm and drugs belonged to Petitioner's fourteen-year-old cousin (i.e., a child), ECF No. [11-1] at 348:21-349:15, who exhibited no indication that he knew what was to be found in the glovebox, *see id.* at 348:14-20 (explaining that the passenger "did[ not] exhibit any of the nervousness, that [Detective Stubley] noticed from the driver"). Thus, trial counsel cannot be deemed ineffective for failing to raise a meritless argument. *See Diaz*, 402 F.3d at 1142.

550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed in the record, and the Court can "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003)). Accordingly, Petitioner is not entitled to an evidentiary hearing. *See id.*

### D.     Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

### IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, **ECF No. [1]**, is **DENIED**.

2.      A certificate of appealability is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

3.     The Clerk of Court is directed to **CLOSE** this case.

Case No. 22-cv-14280-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 20, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Michael Deshawn Johnson, *PRO SE*
C00385
Hardee Correctional Institution
Inmate Mail/Parcels
6901 State Road 62
Bowling Green, Florida 33834